# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff-Respondent,<br><br>vs.<br><br>Samih Fadl Jamal,<br><br>  Defendant-Movant. | No.  CIV 09-0332-PHX-FJM (DKD)<br>       CR 03-0261-1-PHX-FJM<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE FREDERICK J. MARTONE, U. S. DISTRICT JUDGE:

Samih Fadl Jamal filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on February 18, 2009, and an Amended Motion to Vacate on June 8, 2009. He is challenging his 20 felony convictions following a jury trial, and the district court's imposition of concurrent sentences totaling 120 months. He raises two claims in his motion, alleging violations of his fifth and fourteenth amendment rights to due process and his sixth amendment right to the effective assistance of trial counsel. The government contends that the motion is untimely filed, and that his claims are either unsupported, or have already been considered on appeal and rejected. The Court concludes that the motion was timely filed,[1] but that the claims are either precluded or without merit, and recommends that Jamal's motion be denied.

---

[1] Jamal's motion was filed within one year following the date the United States Supreme Court denied the petition for writ of certiorari. *See Jamal v. United States*, 128 S.Ct. 1291 (2008).

**BACKGROUND**

Jamal was one of twenty-seven defendants charged in a 2004 indictment, following an extensive investigation by local, state, and federal law enforcement agencies regarding ongoing fraudulent schemes involving the theft and resale of infant formula. Jamal Trading Company (JTC), operated by Jamal, was part of a national network of businesses engaged in the trafficking of stolen infant formula. The formula was primarily obtained through theft and fraud from discount stores, then sold to wholesale businesses, such as Jamal's, who repackaged it and sold it to formula brokers, who in turn sold it to businesses authorized to sell formula as part of a government food program. Jamal also owned two such businesses. Jamal was identified as an organizer and a leader of the conspiracy (Jamal PSR at ¶¶ 6, 8).

Jamal and three co-defendants proceeded to trial. His trial strategy was to admit that people involved in the case shoplifted the formula, but to assert that he had no knowledge of the stolen formula and did not engage in any theft himself. Defense counsel cross-examined the government's witnesses, and also called sixteen witnesses, including a number of character witnesses (CR Doc. 1213, R.T. 4/13/05, 3501-3514, 3546-3557, 3636-3641). Trial counsel also called several fact witnesses who testified as to their association with Jamal in purchasing and selling baby formula, and that none had any suspicion that any of the baby formula was stolen (*Id.*, 3563-3580, 3581-3589, 3600-3628). Defense counsel also cross-examined Tamer Swailem, a co-defendant who cooperated with the government, in an attempt to refute the charges of making false statements and unauthorized employment of aliens (*Id.*, Doc. 1212, R.T. 4/12/05, 3528-3561; Doc. 1213, R.T. 4/13/05, 3995-3996). Counsel also called two accountants, one of whom worked for JTC and Jamal, in an attempt to refute the charges of structuring financial transactions (*Id.*, Doc. 1211, R.T. 4/7/05, 2944-2960; Doc. 1214, R.T. 4/14/05, 3742-3755).

Jamal was convicted following a jury trial of the following offenses: (1) conspiracy to commit interstate transportation and receipt of stolen property; (2) two counts of interstate receipt of stolen property and aiding and abetting; (3) interstate transportation of stolen

1 property and aiding and abetting; (4) two counts of making false statements; (5) conspiracy
2 to commit money laundering; (6) eleven counts of structuring financial transactions; (7)
3 money laundering; and (8) unauthorized employment of aliens (CR Doc. 1103). The district
4 court sentenced Jamal to concurrent terms, the longest being 120 months, followed by three
5 years' supervised release.

6 On appeal, Jamal raised five issues: (1) he received the ineffective assistance of
7 counsel because of limitations imposed upon counsel by the government and because of
8 numerous errors in the conduct of the trial; (2) the government did not comply with Fed. R.
9 Crim. P. 16 by failing to disclose exculpatory material and failing to fulfill its duty under
10 *Brady v. Maryland*, 373 U.S. 83, 87 (1963), to learn of exculpatory evidence contained in
11 intercepted conversations, including Government Exhibit 463, a declassified, recorded
12 conversation in Arabic (translated into English), which Jamal claimed was improperly
13 admitted; (3) the district court erred in denying his motion to suppress evidence (a) gathered
14 under the Foreign Intelligence Surveillance Act of 1978 (FISA), 50 U.S.C. § 1801 et seq.,
15 and (b) seized from his home and business, because the affidavit supporting the warrant
16 application contained false statements and thus there was no probable cause to search; (4) the
17 district court erred in denying a motion for mistrial when one juror used the internet to learn
18 that Jamal's brother, who worked with Jamal, pleaded guilty to similar charges; and (5) the
19 government presented insufficient evidence to establish that Jamal had knowledge that any
20 of the infant formula involved in his business transactions was stolen.

21 The Ninth Circuit Court of Appeals rejected Jamal's claims, but found the record
22 insufficient to resolve the claim of ineffective assistance on direct appeal. Regarding Jamal's
23 Rule 16 argument, the Court found that he had failed to preserve any argument, that he had
24 not shown any particular non-disclosure prejudicial to his substantial rights, that he did not
25 preserve the *Brady* issue except as to Exhibit 463, and that he did not challenge the district
26 court's resolution as to its admission or translation. The Court further determined that neither
27 the record nor any declaration by counsel established that the government failed to fulfill its

28
- 3 -

1  *Brady* obligations with respect to the intercepted conversations. The Court further ruled that
2  Exhibit 463 was properly admitted based upon a lawful order covering the date on which the
3  conversation recorded in the exhibit was intercepted.

4  The Court determined that suppression of evidence gathered under FISA was not
5  required for any of the reasons cited by Jamal. The Court reviewed the classified documents
6  and agreed that probable cause existed, use was authorized, and notice was given. The Court
7  also determined that even if contested statements in the affidavit supporting the search
8  warrant for his home and office were false, that Jamal failed to make a substantial
9  preliminary showing that the affidavit's remaining content was insufficient to establish
10 probable cause.

11 The Court also concluded that the district court did not err in denying a motion for
12 mistrial when one juror acquired knowledge of related charges against Jamal's brother and
13 shared it with other jurors because that juror was excluded from deliberations before they
14 began. In addition, the Court reasoned that the district court had properly instructed the jury
15 to disregard whatever it might have learned. Moreover, the Court determined that the
16 extrinsic evidence was minimally prejudicial in the context of the entire case because the jury
17 had already learned that other associates of Jamal had pleaded guilty. The Court held that
18 there was overwhelming evidence from which the jury could have found that Jamal knew he
19 was dealing in stolen formula (CIV Doc. 17, Exh 1, Memorandum Decision). The Court
20 denied Jamal's petition for rehearing on September 28, 2007; the United State Supreme
21 Court denied his petition for writ of certiorari on February 19, 2008. Jamal filed his § 2255
22 motion on February 18, 2009.

23                              **INEFFECTIVE ASSISTANCE OF COUNSEL**
24 *Ground One*

25 Jamal contends that he was denied his fifth and fourteenth amendment due process
26 rights and his sixth amendment right to the effective assistance of counsel. He raises five
27 claims. In claim one, Jamal contends that the prosecution failed to review all investigation
28

- 4 -

1 evidence, failed to provide defense counsel access to all surveillance tapes, presented new
2 exhibits during trial and failed to translate and turn over a hundred conversations to the
3 defense. The Court agrees with the government that this claim is actually a *Brady* claim, and
4 that Jamal could have raised the *Brady* issues in this claim on direct appeal, or did so
5 unsuccessfully. In either case, he may not raise the claim in a subsequent § 2255 motion.
6 *United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985); *Medrana v. U.S.*, 315 F.2d 361, 362
7 (9th Cir., *cert. denied*, 375 U.S. 854 (1963)).

8 In claim two, Jamal argues that because some classified evidence could not be
9 revealed to him, counsel was therefore ineffective because he could not discuss with Jamal
10 how to construct an adequate defense. Jamal did not have a security clearance, which
11 prevented counsel from sharing the information with him. Pursuant to the Classified
12 Information Procedure Act (CIPA), counsel was required to receive a security clearance from
13 the Department of Justice prior to having any access to any classified FISA materials. *See*
14 18 U.S.C. app. 3 §§ 1-16. Counsel cannot be found ineffective for representing Jamal in a
15 manner consistent with his obligation to follow the law. Jamal's sixth amendment rights
16 were not violated by counsel's inability to discuss the FISA materials. *See United States v.*
17 *Isa*, 923 F.2d 1300, 1307 (8th Cir. 1991). Regarding counsel's actions concerning this
18 material, trial counsel reviewed the FISA material prior to trial and was unsuccessful in
19 attempts to block the admission of Exhibit 463. As the government points out, appellate
20 counsel also received a security clearance, and found nothing exculpatory in the classified
21 FISA materials.[2]

22 In claim three, Jamal argues that counsel had insufficient time to prepare for trial. In
23 his affidavit, counsel avows that he was able to review the FISA materials and the videotape

---

[2] Jamal raises a similar argument in claim four, and in Ground Two, in claims fourteen, fifteen, and twenty. Those claims fail under the same reasoning.

- 5 -

1  summaries, and finding nothing exculpatory, focused instead on calling 16 of his own
2  witnesses and cross-examining the government's witnesses.[3]

3  In claim five, Jamal contends that the government committed prosecutorial
4  misconduct by not turning over *Brady* material. Specifically, he claims that exculpatory
5  evidence consisting of surveillance videotapes, e-mails and recordings of intercepted
6  conversations was not made available. The court of appeals previously ruled on the FISA
7  intercepts; his failure to raise the issue with respect to the other materials precludes him from
8  doing so in this motion. In any event, the record shows such materials were made available,
9  and contained no exculpatory information. *See* CIV Doc. 17, Exh 2 at ¶¶ 3, 4.[4]

10  Jamal also argues in this claim that there was a *Brady* violation because surveillance
11  tapes from a videocamera in front of JTC were not made available. Jamal contends the tapes
12  would have shown Agent Penberthy avoiding Jamal when he came to collect his money from
13  Swailem. Defense counsel did have access to the videotapes, and the record reflects that
14  what Jamal described was consistent with the testimony of both Swailem and Agent
15  Penberthy, and what counsel argued in closing. *See* CR Doc. 1206, R.T. 3/22/05, 2027-2031,
16  2083-2086; R.T. 4/19/05, 4024. He also argues that another videotape showing him kicking
17  a co-defendant out of JTC for attempting to sell stolen formula was not made available.
18  Neither counsel has identified such a tape and to the government's knowledge, no such tape
19  exists. Finally, Jamal argues in this claim that recorded conversations between Swailem and
20  Jamal would prove that Jamal told Swailem not to buy stolen formula from Agent Penberthy.
21  The only recorded phone calls were between Penberthy and Swailem. *See* CR Doc. 1206,
22  R.T. 3/22/05, 2001-2086; CIV Doc. 17, Exh 3.

---

[3] Jamal raises s similar argument in Ground Two, in claim twenty-one. That claim fails for the same reason.

[4] Jamal makes a similar argument in Ground Two, claim 22. That claim fails for the same reason.

- 6 -

*Ground Two*

In this ground, Jamal asserts additional claims of ineffective assistance of counsel. He presents thirty-four claims with a number of sub claims. In claims one, two, four (E), five, ten, twelve and nineteen Jamal argues that trial counsel was ineffective for failing to object to the admission of Exhibit 463. He contends as follows: (1) the government submitted only partial transcripts of all intercepted conversations and counsel did not request complete transcripts of phone calls which contained exculpatory material that would have exonerated him; (2) Exhibit 463 was taken out of context and the surrounding conversation would have proved his innocence; (3) the government deliberately translated Exhibit 463 incorrectly; (4) counsel did not offer specific exculpatory portions of a recorded conversation in Exhibit 463 that would have demonstrated his innocence; (5) counsel did not offer correct translations of Exhibit 463, even though correct translations were provided during the bond hearing; (6) counsel should have called Arabic language experts to examine the translation used by the government; and (7) counsel failed to preserve a *Brady* challenge to any evidence other than excised portions of Exhibit 463. As the government points out, these claims were raised on direct appeal and rejected, and are therefore precluded. *Redd*. The Ninth Circuit concluded that Jamal could point to no exculpatory evidence in the exhibit. In addition, counsel did object to the admission of Exhibit 463, and the trial court allowed its admission but directed the government and defense counsel to review the conversations surrounding the exhibit to make sure that there was no exculpatory material. *See* CR Doc. 1211, R.T. 4/7/05, 3043-3044, 3054-3055. The government had the entire conversation declassified, it was made available to the defense, and it did not contain exculpatory information. Counsel also had an independent translator examine the conversation contained in Exhibit 463, and the trial court told him he could call his own interpreter to testify as to meaning of the words in the transcript. *See* Doc. 1211, 3054-3055; Doc. 1212, 3168-3169.

In claims three and four, Jamal argues that counsel should have offered into evidence other exculpatory evidence identified by Jamal, including hundreds of hours of surveillance

- 7 -

tapes and thousands of calls obtained during the investigation. Again, the record indicates otherwise. Surveillance tapes and FISA intercepts were made available to the defense; neither trial nor appellate counsel found any exculpatory evidence. Counsel could not be deficient for failing to make use of such evidence.

In claim eleven, Jamal contends that the admission and use of the co-defendants' pleas should not have been admitted without the right to cross-examine the co-defendants. His due process violation claim is precluded by not raising it on appeal. In addition, counsel was not deficient because each of the cooperating witnesses was cross-examined by one of the defense counsel about the terms of their plea agreements.

In claims 4(D) and 32(I), Jamal contends that counsel failed to admit paperwork from the jails where the shoplifters that worked for Abdelsalam and Hinki, two co-defendants, were being incarcerated. He claims the paperwork would show he did not know them and did not bond them out of jail. There was no such testimony that he either knew them nor were any documents presented that he had bonded any of them out of jail. He makes the same claim about Al-Hulaisi, another co-defendant. However, two co-defendants testified the Jamal worked with Al-Hulaisi; the government also presented evidence that Jamal bonded him out of jail. *See* CR Doc. 1202, R.T. 3/10/05, 1224-1229; Doc. 1210, R.T. 4/6/05, 2812-2816; Doc. 1209, R.T. 4/5/05, 2675-2676.

In claim 4(E), Jamal argues that paperwork from JTC would have shown that only 5% of his business involved purchases from co-defendants. The testimony contradicted this claim, including testimony that it involved as much as 60% in 2002. *See* CR Doc. 1210, 2774-2859; Doc. 1211, 3018. In addition, the Ninth Circuit found overwhelming evidence that Jamal was dealing in stolen formula.

In claims 4(A), 7, 32(D) and 33, Jamal argues that a witness named Ricky Garcia wrote a letter stating that the government coerced him into testifying against Jamal and co-defendant Elrawy. He contends that trial counsel was ineffective for failing to cross-examine Garcia with the letter. Again, the record contradicts this claim. Garcia's testimony was used

- 8 -

primarily against Elrawy; trial counsel decided not to use the letter because it appeared to have been written by Elrawy and signed by Garcia. Because there was a question concerning the letter's authenticity, counsel for Jamal made a reasonable, ethical choice not to cross-examine Garcia with the letter. *See* CIV Doc. 17, Exh 2.

In claims six and thirteen, Jamal argues that trial counsel should have subpoenaed Detective Granieri for a *Franks* hearing because there was a substantial preliminary showing that his affidavit contained intentionally falsified statements and misleading omissions, negating a finding of probable cause. Both the district court and the Ninth Circuit ruled that even if some of the statements in the affidavit were false, Jamal had failed to make a substantial preliminary showing that the remainder of the affidavit was insufficient to establish probable cause. Because the issue was resolved against Jamal on appeal, he is precluded from raising it in this motion. *Redd*.

In claim eight and 31 (1), Jamal contends that trial counsel called a witness, Jamal Sankari, against his wishes. Jamal alleges that Sankari testified against him in retaliation for Jamal firing him for stealing. In trial counsel's affidavit, he avows that he called Sankari at Jamal's recommendation. *See* Doc. 17, Exh 2.

In claims nine, sixteen, seventeen and twenty-eight, Jamal contends that trial counsel was not qualified because this was his first criminal trial, and he should have informed the district court that due to his lack of experience, he believed himself to be ineffective. Again the record contradicts Jamal's claim. Counsel filed numerous motions, thoroughly cross-examined government witnesses, and called sixteen witnesses.

In claim eighteen, Jamal argues that trial counsel failed to preserve the issue of the government's compliance with Rule 16. However, Jamal does not cite in this claim any particular non-disclosure that prejudiced his rights or how counsel's action was unreasonable.

In claim twenty-three, Jamal contends that counsel should have insisted on a second chair because of the complexity of the case, the scope of the allegations, the nature of the

government's information gathering methods, and the fact that there were two prosecutors. Jamal has not shown how a second chair would have made a difference.

In claims twenty-four, twenty-five, twenty-six, twenty-seven and twenty-nine, Jamal argues that counsel should have complained that the tapes and summaries of the tapes were reviewed for *Brady* material by non-attorney agents, rather than attorneys. He argues that the government never reviewed, or prepared translations of all the tapes to discover *Brady* material, and that counsel never determined how many summaries were made and translated. Discovery of FISA-derived evidence is limited to that which is required under *Brady. See, e.g., United States v. Thomson*, 752 F.Supp. 75, 82-83 (W.D.N.Y. 1990). Summaries were prepared, reviewed, and made available, and neither counsel found any exculpatory material. In any event, the argument was litigated unsuccessfully on appeal and is therefore precluded. *Redd.*

In claims 30 (A)-(F), Jamal contends that counsel was ineffective for failing to raise specific errors in Swailem's testimony. Specifically, he claims that Swailem lied throughout his testimony. He offers no factual support for this assertion. In any event, counsel vigorously cross-examined Swailem and it was the province of the jury to judge his credibility. That they resolved the issue of credibility against Jamal does not establish deficient performance.

In claim 31, Jamal contends that trial counsel should have prepared his witnesses before trial. He essentially argues that had counsel done so, he would have proved there was insufficient evidence. The Ninth Circuit found ample evidence of Jamal's intentional structuring of transactions to avoid reporting requirements and that he knew he was dealing in stolen formula. He offers no affidavits or other documentary support that the witnesses' testimony would have changed had the preparation been any different. Defense counsel directly attacked the government's case and was able to secure acquittals on several counts.

In claim 32, Jamal argues fifteen instances of alleged prosecutorial misconduct to which counsel failed to object. The underlying claims of misconduct are precluded because

1  of his failure to raise them on appeal. In addition, he does not allege specific instances, but
2  merely questions the testimony of certain witnesses. The Court agrees with the government
3  that Jamal has not presented any competent evidence, and therefore has not established that
4  any conduct "so infected the trial with unfairness as to make the resulting conviction a denial
5  of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

6  In claims 32 (A), (E), (F), (G), (K) and (L), Jamal makes allegations that are not
7  supported by the record. The government neither argued, nor did a witness testify, to any of
8  the following: (1) Kamel Al-Fahdeli and others provided formula exclusively to JTC; (2)
9  Jamal lied on his citizenship application; (3) Jamal was the brother of Ramy Jamal and
10 Mamoun Al-Jammal was his uncle; (4) Jamal was making a profit of $200 per case of
11 formula; (5) between January 1997 and March 2003, JTC made $22,000,000 from the
12 proceeds of the sale of stolen infant formula; and (6) that one of Jamal's employees was
13 producing counterfeit receipts. Jamal's claims of ineffective assistance of counsel based on
14 these untrue allegations fail.

15 In claim 32(B), Jamal argues that counsel was deficient for failing to object to the
16 government's misconduct in withholding evidence, including videotapes and taped
17 conversation that would have proved his innocence. Counsel was not ineffective because the
18 government did not withhold any exculpatory evidence.

19 In claim 32(C), Jamal argues that the government knowingly and intentionally
20 translated Exhibit 463 to make him appear to be buying stolen property. That particular
21 exhibit did not demonstrate that he was buying stolen property. More importantly, he had
22 the opportunity to translate the exhibit, and it produced nothing exculpatory.

23 In claims 32 (H), (K), (M), (N) and (O), Jamal challenges the sufficiency of the
24 evidence by contending that the prosecutor made false claims through various witnesses. He
25 is precluded from reurging this issue. *Redd*. In claim 32(J), he alleges, without support, that
26 the government knowingly allowed witnesses to lie when testifying at trial. Without specific

27
28

facts, he is not entitled to a hearing on this claim. *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996).

In claim 33, Jamal argues, without support, that counsel was deficient for failing to impeach certain witnesses regarding false statements. Specifically, he argues that counsel had the evidence necessary to impeach Swailem, Garcia, Abdelsalam, Tarq Awwad, and Osamah Yacoub, but neglected to do so. He cites no affidavits or specific evidence or information, only speculation, and therefore, his claim fails. *See Id.*

In claim 34, Jamal contends that counsel should have subpoenaed eighteen witnesses, but lists only fourteen. According to Jamal, each of these witness, except Granieri, would have testified that Jamal (1) obtained all the products legally; (2) did not have any knowledge that any of the products or baby formula were stolen; (3) never conspired to buy or sell any stolen products; (4) never conspired to commit money laundering; (5) never structured any transactions; (6) never hired any unauthorized aliens at JTC; and (7) had no knowledge of any wrongdoing by JTC. Again, Jamal provides no supporting evidence by affidavit or otherwise. In his affidavit, counsel avows that he was aware of Jamal's allegation regarding the witnesses, but he found that many were not helpful to Jamal's defense and made the strategic decision not to call them as witnesses. *See Riley v. Payne*, 352 F.3d 1313, 1318 (9th Cir. 2003). That Jamal disagrees with counsel's trial strategy is insufficient to support a claim of deficient performance. *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980). Counsel called sixteen witnesses, who testified to much of what Jamal speculates his own witness list would have produced. He has therefore failed to demonstrate any prejudice.

**IT IS THEREFORE RECOMMENDED** that Samih Fadl Jamal's Amended Motion to Vacate, Set Aside or Correct Sentence be **denied** (Doc. 9).

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **denied** either because denial of the motion is justified by a plain procedural bar and jurists of reason would not find the ruling debatable, or because Jamal has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have seven days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

DATED this 13th day of December, 2010.

_____
David K. Duncan
United States Magistrate Judge